UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 10-20101-cv-GOLD/WHITE

DOUGLAS MARSHALL,[1]

       Plaintiff,

vs.

FLORIDA DEPARTMENT OF
CORRECTIONS, *et al.*,

       Defendants.

_____/

## OMNIBUS ORDER

THIS CAUSE is before the Court upon several reports issued by U.S. Magistrate Judge Patrick A. White (the "Reports") in this action. [ECF Nos. 60, 92, 110, 139]. Plaintiff filed Objections to each of the Reports. [ECF Nos. 76, 101, 113, 140].[2] Having reviewed the Reports, the Objections, relevant parts of the record, and applicable law, I affirm and adopt all of the Magistrate Judge's Reports with the exception of part of his recommendation concerning Eleventh Amendment immunity as explained in more detail below.

---

[1] Plaintiff files and signs his sworn complaint under the name "Douglas Marshall"; however, according to the Florida Department of Corrections, his name is Douglas M. Jackson. To avoid confusion, I will refer to the Plaintiff simply as "Plaintiff" throughout this Order.

[2] In Plaintiff's objections to Judge White's first Report, Plaintiff refers to the objections filed by his cellmate Cedric Arnez in the proceeding before the Honorable Adalberto J. Jordan. [ECF No. 76; ECF No. 40 in Case No. 10-20102].

1

## I.     BACKGROUND FACTS

On January 12, 2010, Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. §§ 1983, 1985, 2000 in which he alleges that the Defendants—the Florida Department of Corrections, two Wardens, the Chaplain Supervisor, and the Food Service Director—improperly denied him Kosher food at certain correctional institutions. [ECF No. 1]. In his Amended Complaint, Plaintiff contends that he is a "Hebrew [person] of the Torah. . . [and an] observant Orthodox Religi[ous] Practitioner[]" who is required to follow "[d]ietary Kasruth (Kosher) [l]aw." [ECF No. 12 ¶¶ 7, 9]. He alleges that, starting in 2005, personnel at various Florida Department of Corrections institutions[3] have consistently denied him access to Kosher meals, drinks, and snacks. [*Id.* ¶ 10]. He asserts that no Orthodox Jewish person in his position could earnestly and sincerely practice his or her religion because "no facility provides [Kosher] food and drinks during regular . . . meals, nor during High Holy Days." [*Id.* ¶ 13]. Thus, Plaintiff now brings this *pro se* action, requesting injunctive relief and damages. [*Id.* ¶ 39].

## II.    JURISDICTION AND LEGAL STANDARD

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1331. I must conduct a review of the portions of the Magistrate Judge's Reports to which the Parties have objected. 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–51 (1985). Although the standard of my review is *de novo*, I am not required to reassess every single finding and determination in the Report because "the statute permits the district court to

---

[3] Plaintiff contends that in 2005 he was denied Kosher food at Columbia Correctional Institute in Lake City, Florida. He further asserts that this practice continued in 2008 at Martin Correctional Institute and in 2009 at Everglades Correctional Institute.

give the magistrate's proposed findings of fact and recommendations such weight as [their] merit commands and the sound discretion of the judge warrants without violating a party's due process rights, so long as the ultimate decision is made by the district court." *Jean-Baptiste v. Gutierrez*, 680 F. Supp. 2d 1318, 1320–21 (S.D. Fla. 2010), *rev'd on other grounds*, 627 F.3d 816 (11th Cir. 2010) (internal quotation marks omitted).

## III.   DISCUSSION

The four Reports issued by Judge White deal with the Defendants' Motion to Dismiss and several motions for emergency relief filed by the Plaintiff.  I will discuss each Report and underlying motion below.

### A.   Judge White's Report on Defendants' Motion To Dismiss

Judge White's first Report concerns the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendants Willis, Perkins, Lam and Jurado.  [ECF Nos. 42, 60]. Defendants put forth five separate arguments in support of their Motion to Dismiss: (1) a compelling governmental interest justifies the Defendants' decision to serve vegan (not kosher) food as the least restrictive means of furthering that governmental interest; (2) the Amended Complaint fails to state a claim pursuant to Fed. R. Civ. P. 8; (3) the Amended Complaint fails to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6); (4) the action is barred by the Eleventh Amendment; and (5) the Defendants are entitled to qualified immunity. [ECF No. 42, p. 1].  Plaintiff filed a Response in Opposition to the Motion [ECF No. 49], and two separate Notices of Supplemental Authority. [ECF Nos. 50, 51]. Judge White's Report recommends denying Defendants' Motion to Dismiss on all grounds except for the fourth ground, in which he recommends that all claims against Defendants in their

official capacity be dismissed pursuant to the Eleventh Amendment. [ECF No. 60, p. 6].

As noted above, I am obligated to conduct a *de novo* review of any Objections filed in opposition to the Report. Here, the Defendants filed no Objections, and the Plaintiff referred to the Objections filed in a separate proceeding before Judge Jordan, which relate to the same Report issued by Judge White. [ECF No. 76; ECF No. 46 in Case No. 10-20102]. In the Objections, Plaintiff argues that (1) Judge White exercised bias by "telling Defendants to now file a summary judgment motion"; (2) the Report "willfully and deliberately ignored Plaintiff's defenses"; and (3) the Report erred by dismissing all claims against Defendants in their official capacity. [ECF No. 46 in Case No. 10-20102 at 2, 5, 8]. Judge Jordan adopted and affirmed the same Report in full despite these Objections. [ECF No. 45 in Case No. 10-20102]. I will briefly address the merits of the motion and the Objections below.

## I. Least Restrictive Means

Judge White dismissed the Defendants' first argument—that the Defendants' current policy of providing vegan meals instead of kosher meals is the least restrictive means of furthering the compelling governmental interest of minimizing costs and security risks—because this issue is more appropriate for summary judgment than for a motion to dismiss. I agree with Judge White. Defendants rely on two cases for the proposition that this Court should dismiss the Plaintiff's Amended Complaint before discovery and before the Defendants must file an Answer. [ECF No. 42 ¶¶ 10–13]. But both of these cases were resolved on motions for summary judgment, not motions to dismiss. *See Linehan v. Crosby*, 346 F. App'x 471, 472–73 (11th Cir. 2009) (affirming district court's ruling on

motion for summary judgment where Department of Corrections submitted affidavits showing that its current policy of providing vegan meals instead of kosher meals was the least restrictive means); *Baranowski v. Hart*, 486 F.3d 112, 116, 125–26 (5th Cir. 2007) (affirming district court's grant of summary judgment in § 1983 dispute over prison food). In short, Defendants' argument on this point is premature at this stage in the proceedings and may be more appropriate to revisit on summary judgment.[4]

In his Objections to the Report, Plaintiff asserts that Judge White exercised "bias" by "telling Defendants to now file a summary judgment motion." [ECF No. 46 in Case No. 10-20102, p. 2]. Like Judge Jordan, I am not persuaded by this argument. Plaintiff points to no evidence that Judge White was somehow biased, and Judge White's well-reasoned Report demonstrates the exact opposite. Further, Plaintiff's objection to Judge White's Report on this point is illogical because Judge White's conclusion *actually supports* Plaintiff's argument—namely, that this case should survive the Defendant's Motion to Dismiss and may be more proper for analysis at a later stage in the proceedings.

### ii. Failure to State a Claim

Defendants' second and third arguments in their Motion To Dismiss are that the Amended Complaint fails to state a claim pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6). I agree with Judge White's determination that Plaintiff has adequately stated a claim upon which relief can be granted. [ECF No. 60, p. 3].

It is well-established that a complaint may be dismissed if the plaintiff's claim for

---

[4] In further support of his finding, Judge White also cites to a case from the Northern District of Florida. *See Young v. McNeil*, Case No. 08-44, 2009 WL 2058923 (N.D. Fla. July 13, 2009). The defendants in that case prevailed in demonstrating a valid, rational connection between legitimate concerns and budgetary constraints *at the summary judgment level*, and not following a 12(b)(6) motion.

relief is merely conceivable, not plausible. *See Bell Atlantic v. Twombley*, 127 S. Ct. 1955, 1966 (2007). To survive a Motion to Dismiss, a plaintiff need not plead detailed factual allegations, rather he must avoid "labels, conclusions, and a formulaic recitation of the elements of a cause of action . . ." *Id.* at 1965. The purpose of the Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Twombly*, 127 S. Ct. at 1964).

Plaintiff's Amended Complaint meets this test. Because he is proceeding *pro se*, I am required to adopt a "less stringent" standard and to exercise "especial care . . . when an action [is] brought alleging denial of basic constitutional liberties by an indigent prisoner lacking formal legal training." *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985); *Moore v. Florida*, 703 F.2d 516, 520 (11th Cir. 1983). Although his pleading is hand-written and primarily uses informal, lay expressions rather than formal, legal language, the nature of Plaintiff's allegations are simple and straight forward: He is a Jewish prisoner who wishes to eat Kosher food in accordance with his religion, and the Defendants, who are responsible for providing his food, have denied him access to such Kosher food. These factual allegations render his claim for relief plausible and therefore withstand an analysis under Rules 8 and 12(b)(6).[5]

---

[5] Defendants also allege that Plaintiff has failed to exhaust administrative remedies. [ECF No. 42 ¶ 27]. But this contention is without merit as Plaintiff affirms that he exhausted all administrative remedies prior to filing his suit. [ECF No. 49, p. 38]. Further, Judge White correctly notes that the Supreme Court has held that failure to exhaust is an affirmative defense, and a plaintiff is not required to plead and demonstrate exhaustion of remedies in his complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also* ECF No. 60, p. 5.

### iii.     Eleventh Amendment

As for Defendants' fourth argument, Judge White recommends that the Eleventh Amendment prohibits Plaintiff from suing Defendants in their official capacity.  Defendants correctly point out that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 109 S. Ct. 2304, 2312 (1989).  The Eleventh Circuit has explained that "it is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 suits." *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).  Furthermore, after reviewing specific provisions of the Florida statutes, the court concluded that "Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages." *Id.*; *see also Adams v. Wainwright*, 512 F. Supp. 948, 954 (11th Cir. 1981) (same).

Nevertheless, while state defendants sued in their official capacity for monetary damages under § 1983 are immune from suit under the Eleventh Amendment, they are <u>not</u> immune from claims seeking prospective declaratory or injunctive relief. *See Powell v. Barrett*, 496 F.3d 1288, 1308 & n.27 (11th Cir.2007); *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehabilitative Serv.*, 225 F.3d 1208, 1220 (11th Cir.2000); ECF No. 46 in Case No. 10-20102, p. 9.  Plaintiff in this case seeks both injunctive relief as well as relief in the form of compensatory and punitive damages. [ECF No. 12, p. 19].  Judge White did not address the different types of relief requested by the Plaintiff in his Report. [ECF No. 60, p. 5].  I agree with Judge White to the extent that he recommends that all claims <u>*for monetary damages*</u> against Defendants in their official capacities should be

7

dismissed. But binding case law requires me to permit Plaintiff to pursue his claims against the Defendants in their official capacities in relation to his claims for *prospective injunctive relief*.[6] Therefore, as to this aspect of Judge White's Report, I affirm in part.

### iv. Qualified Immunity

Defendants' last argument in their motion to dismiss is that they are entitled to qualified immunity as to Plaintiffs' allegations against them in their individual capacities. [ECF No. 42 ¶ 31]. Judge White has determined that while this argument may have merit, it is ultimately premature at this stage of the proceedings. I agree.

The Supreme Court has explained that qualified immunity is an affirmative defense to personal liability that a defendant has the burden of pleading. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). It has further determined that "qualified immunity protects government officials performing discretionary functions from civil liability if their conduct violates *no clearly established statutory or constitutional rights of which a reasonable person would have known*." *Harlow v. Fitzgerald*, 455 U.S. 800, 818 (1982) (emphasis added). As for the timing when a defendant should raise this affirmative defense, the Eleventh Circuit has held that "qualified immunity can be pled at various stages in a case [and] . . . may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule

---

[6] Defendants also appear to concede that this Court may not dismiss Plaintiff's claims for injunctive relief. ECF No. 42 ¶ 30 ("Thus, the Eleventh Amendment bars this action against DEFENDANTS in their official capacity, and, alternatively, against the DOC (*other than the injunctive relief* which would not be valid/allowed against the DEFENDANTS represented here as they are without the ability to effectuate)." (emphasis added)). Defendants provide no further explanation as to why the named Defendants would not be able to effectuate the relief requested. Thus, I do not address this aspect of Defendants' argument.

56(e); or (4) at trial." *Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir.2002).

Nevertheless, where it is not evident from the allegations of the complaint alone that a defendant is entitled to qualified immunity, "the case will proceed to the summary judgment stage, *the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation.*" *Johnson v. Breeden*, 280 F.3d 1308, 1317 (11th Cir. 2002) (emphasis added). Thus, courts often postpone decisions regarding qualified immunity until after resolving a motion to dismiss. *See, e.g.*, *Williams v. Santana*, 340 F. App'x 614, 616 (11th Cir. 2009) (affirming district court order that adopted magistrate report, which had concluded that it was "premature to determine whether [the defendant] may be not entitled to qualified immunity," under a motion-to-dismiss analysis); *Corey Airport Servs., Inc. v. City of Atlanta*, 181 F. App'x 908, 910 (11th Cir. 2006) (same).

Considering this case law and the language of the Amended Complaint, it is unclear at this point in the proceedings whether a reasonable person in Defendants' position would have known that their conduct violated clearly established statutory or constitutional rights held by the Plaintiff. Thus, I agree with Judge White's conclusion that it is simply too early to make such a determination.

### B. Judge White's Report on Plaintiff's Writ of Prohibition

Judge White's second Report deals with the Petition for Writ of Prohibition filed by Plaintiff to challenge the jurisdiction of this Court. [ECF Nos. 86, 92]. In the Petition, Plaintiff contends that "this Court (and Defendants) is [*sic*] a private 'corporation' with absolutely no jurisdiction whatsoever over your sovereign (sovereignty) plaintiffs herein

9

and, by pretending jurisdiction is criminally committing a 'fraud' upon and against plaintiffs!"

[ECF No. 86 ¶ 7 (emphasis omitted)].

A writ of prohibition is defined as

a kind of common-law injunction to prevent an unlawful assumption of jurisdiction. . . . It is a common-law injunction against governmental usurpation, as where one is called coram nonjudice (before a judge unauthorized to take cognizance of the affair), to answer in a tribunal that has no legal cognizance of the cause. It arrests the proceedings of any tribunal, board, or person exercising judicial functions in a manner or by means not within its jurisdiction or discretion.

Black's Law Dictionary 1248 (8th ed. 2004).

Judge White's second Report recommends denying the Plaintiff's Petition because a writ of prohibition is a "drastic and extraordinary remedy," which should only be employed in extreme circumstances. See In re Vargas, 723 F.2d 1461, 1468 (10th Cir. 1983). Plaintiff here has presented no such circumstances. In addition, Judge White correctly notes that Plaintiff has attempted to raise similar arguments in other cases in this district to no avail. See, e.g., Marshall v. State of Florida, Case No. 10-20220 (S.D. Fla. Apr. 21, 2010); Marshall v. State of Florida, Case No. 08-14056 (S.D. Fla. May 13, 2008).[7]

In his Objections to the Report, Plaintiff argues that the Report is "absurd" and that "without any proof, evidence, contract or authority whatsoever both the Defendants and Court 'corporations' has [sic] unlawfully and unconstitutionally presumed jurisdiction upon your sovereign (sovereignty) plaintiffs contrary to the rule of law!" [ECF No. 101, pp. 4, 7]. These objections defy logic, considering that Plaintiff voluntarily filed his action with this

---

[7] Judge White also notes that Plaintiff's attempt to separate himself from the jurisdiction of the Court is known as the theory of "redemption," an anti-government scheme that uses commercial law to harass and terrorize its targets. [ECF No. 92, p. 2].

Court.[8] In short, Plaintiff's arguments have no legal basis. Thus, I agree with Judge White's analysis and deny Plaintiff's Petition for Writ of Prohibition.

### C. Judge White's Report on Plaintiff's Request for Temporary Restraining Order and Preliminary Injunction

Judge White's third Report deals with Plaintiff's Motions for a Temporary Restraining Order and a Preliminary Injunction. [ECF Nos. 102, 103]. In these motions, Plaintiff argues that Defendants have improperly prohibited him from practicing his religion because they have failed to make Kosher food available to him, and he argues that Defendants' decision to separate him from his cellmate, Cedric Arnez (who has brought similar claims against Defendants before Judge Jordan), amounts to "torture." [ECF No. 102 ¶ 6; ECF No. 103 ¶¶ 3–7]. Judge White recommends denying these motions on the basis that Plaintiff has failed to satisfy the high standard necessary to obtain such extraordinary relief. [ECF No. 110].

I affirm and adopt Judge White's Report for the following reasons. A district court must consider four factors when faced with a request for a preliminary injunction. The party seeking relief must demonstrate: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to him outweighs the potential harm the injunction may do to the defendant; and (4) that the public interest will not be impaired if the injunction is granted. *Johnson v. U.S. Dept. of Agric.*, 734 F.2d 774, 781 (11th Cir. 1984); *United States v. Lambert*, 695 F.2d 536 (11th Cir. 1983). The arguments set forth in

---

[8] Of course, nothing in this Order would prevent Plaintiff from voluntarily dismissing this action pursuant to Federal Rule of Civil Procedure 41(a).

Plaintiff's motion regarding kosher foods fail to meet this test. First, Plaintiff does not address the likelihood of his success on the merits of the case. Second, the substantial threat that he says that he faces is that "the slightest morsel of forbidden foods taints not only the body but the soul itself." [ECF No. 102, p. 10 (emphasis omitted)]. But Plaintiff has not addressed Defendants' arguments that at least some Kosher food is available at Everglades Correctional Institution for inmates who elect to follow a Kosher diet. Third, he argues that the relief he requests cannot harm the Defendants because of their "corporate" form. [*Id.* at 10]. Fourth, he argues that the public interest could not be negatively effected by his request for relief because "Plaintiff's entitlement to 'kosher' is unquestionable!!!" These last two arguments are legally baseless and warrant no further consideration.

As for Plaintiff's second request for a preliminary injunction or a temporary restraining order on the basis of Defendants' decision to separate Plaintiff from his former cellmate (Cedric Arnez), I also find that Plaintiff fails to meet the test for the extraordinary relief he requests. In his motion, Plaintiff asserts that Defendants have engaged in a concerted effort to "attack," "abuse," and "torture" him. [ECF NO. 103 ¶¶ 2, 7]. Despite these dramatic characterizations, the only concrete facts that Plaintiff puts forth to support his request for relief are Defendants' orders to have Plaintiff and Mr. Arnez separated and locked up in different holding areas. [ECF No. 103 ¶¶ 3-7]. Thus, I am unpersuaded that Plaintiff meets any of the four prongs of the test listed above. As Judge White correctly concluded, "[i]nmates do not get to choose their cell mates." [ECF No. 110, p. 2].

Plaintiff's objections to Judge White's Report present no further substantive arguments. To express his disagreement with Judge White's analysis, Plaintiff filed a copy

of the Report with the Court with his own handwriting covering the front page of the Report, stating "I DO NOT CONSENT, I REJECT THIS OFFER AND I REFUSE THIS CONTRACT (front and back). RETURN TO SENDER." Again, I find these objections legally baseless in light of Judge White's well-reasoned Report and do not consider them further.

For all of these reasons, I agree with Judge White that Plaintiff has failed to establish that a preliminary injunction or a temporary restraining order would be appropriate under these circumstances.[9]

### D.  Judge White's Report on Plaintiff's Emergency Petition for Approval To Purchase Kosher Food for Passover

Judge White's fourth Report deals with Plaintiff's Emergency Petition for Court Ordered Approval To Purchase Kosher Food for Passover. [ECF Nos. 127, 128, 139]. In his Petition, Plaintiff requests emergency relief on the basis that the kosher food order deadlines for the holy days of Passover (April 18–26, 2011) are "fast approaching." [ECF No. 127, p. 3]. Plaintiff requests an order permitting him to purchase foods for the upcoming religious observance. Judge White recommends denying the Petition on the basis that Defendants filed a response in opposition to the Petition, stating that all inmates wishing to observe Passover could have ordered Kosher meal packages at the cost of $27.50. [ECF No. 133, p. 2]. Attached to Defendant's Opposition is an affidavit from Alex Taylor, Chaplaincy Services Administrator for the Florida Department of Corrections, in

---

[9] My analysis as to why Plaintiff fails to meet the test for a preliminary injunction is also conclusive as to why he fails to meet the test for a temporary restraining order. See *United States v. Alabama*, 791 F.2d 1450, 1458 (11th Cir. 1986) ("[A] TRO and a preliminary injunction are somewhat similar . . . ."); *Se. Mech. Servs., Inc. V. Brody*, Case No. 08-1151, 2008 WL 2439801, at *1 (M.D. Fla. June 13, 2008) (denying motion for temporary restraining order under test for preliminary injunction).

which Mr. Taylor confirms that "all Jewish inmates, including [Plaintiff], are permitted this year to order Kosher-for-Passover meals packages for the Passover week [by completing an order form that was provided to each inmate identified as Jewish]." [ECF No. 133-1]. As a result of this affidavit, Judge White denied Plaintiff's Petition as moot. [ECF No. 139].

Plaintiff filed a "Partial Reply" to Judge White's Report, which I will construe as Objections to the Report. See Mederos v. United States, 218 F.3d 1252, 1254 (11th Cir. 2000) ("*Pro se* filings . . . are entitled to liberal construction."). In his Objections, Plaintiff claims that he never received a copy of Mr. Taylor's affidavit. [ECF No. 140, p. 2]. Upon receiving this objection, Defendants filed a notice that they have served an extra copy of Mr. Taylor's affidavit to Plaintiff. [ECF No. 142]. Plaintiff also argues that he needs at least 26 full meals to properly participate in Passover and that the food in the package amounts to only two meals per day. [*Id.* at 3]. By making this objection, Plaintiff does not appear to dispute that he had the *ability* to order Kosher food in preparation for Passover—which was his initial grievance in his Petition for Emergency Relief to begin with. Instead, he now takes issue with the *amount* of Kosher food allotted in the package. Although the exact number of meals provided by the food included in the Kosher package is unclear,[10] it is clear from Plaintiff's objections that his original request—for emergency relief to have the ability to order any kind of Kosher food at all in preparation for the holy week—is now moot. Therefore, I adopt and affirm Judge White's Report in full.

---

[10] According the order form, the food did not come in set "meals," but rather in amounts (*i.e.* 1 box of 1 pound matzo, 2 pouches of 3 oz. smoked salmon, 12 oz. chicken/matzah ball soup, 3.5 oz. bittersweet chocolate, 2 containers of 10 ounces macaroons, 12 oz. of chicken with potatoes, 3.5 oz. of milk chocolate, and 2 packages of 3 soup bouillon cubes). [ECF No. 133-1, p. 4].

Accordingly, it is ORDERED AND ADJUDGED that

1. Judge White's Report on Defendants' Motion To Dismiss [ECF No. 60] is **AFFIRMED AND ADOPTED** on all recommendations except as to the recommendation concerning Eleventh Amendment sovereign immunity, which is **PARTIALLY AFFIRMED AND ADOPTED**.

2. Defendants' Motion To Dismiss [ECF No. 42] is **DENIED** on all of the grounds put forth by Defendants except as to Plaintiffs' claims against Defendants in their official capacities for <u>monetary damages</u>, which are **DISMISSED**. Plaintiff's claims against Defendants in their official capacities for <u>prospective injunctive relief</u> are **NOT DISMISSED**.

3. Judge White's Report on Plaintiff's Petition for Writ of Prohibition [ECF No. 92] is **AFFIRMED AND ADOPTED**.

4. Plaintiff's Petition for Writ of Prohibition [ECF No. 86] is **DENIED**.

5. Judge White's Report on Plaintiff's Request for Temporary Restraining Order and Preliminary Injunction [ECF No. 110] is **AFFIRMED AND ADOPTED**.

6. Plaintiff's Motions for a Preliminary Injunction and Temporary Restraining Order [ECF Nos. 102, 103] are **DENIED**.

7. Judge White's Report on Plaintiff's Emergency Petitions for Approval To Purchase Kosher Food for Passover [ECF No. 139] is **AFFIRMED AND ADOPTED**.

8. Plaintiff's Emergency Petitions for Approval To Purchase Kosher Food for

Passover [ECF Nos. 127, 128] are **DENIED AS MOOT**.

9. Defendants are directed to file an Answer on or before **Monday, April 18, 2011**.

DONE AND ORDERED in Chambers at Miami, Florida this 31 day of March, 2011.

THE HONORABLE ALAN S. GOLD
U.S. DISTRICT COURT JUDGE

cc:
U.S. Magistrate Judge Patrick White
All counsel of record

Douglas Marshall, *pro se*

DC #823916
Everglades Correctional Institution
1599 S.W. 187th Avenue
Miami, FL 33194